CATHERINE M. CUNNINGHAM *vs*. HENRY J. FREDERICKS
ET AL.

Third Judicial District, New Haven, June Term, 1927.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

In an action to quiet title, the burden of establishing his claim to the property rests upon the plaintiff.

Matter which is evidential in character has no proper place in a finding of facts.

The controlling issue in the present case was the location of the northerly boundary of a tract of land, which, after 1889, was developed as a shore property and sold in separate parcels. The defendant, who owned a lot adjoining the disputed boundary, claimed that a blue print and a map, which were made and filed in 1895 and 1896, respectively, established it as the apparent south line of a highway known as New Haven Avenue, which bordered the tract upon the north, while the plaintiff, who owned a lot south of the defendant's, claimed that the true northerly boundary of the tract was about five feet north of the apparent south line of the highway and substantially in accordance with the course of an old stone wall which was in existence at the time of the subdivision. *Held:*

1. That the trial court's finding as to the location of the stone wall was supported by the evidence; and that its conclusion that the northerly boundary was the line claimed by the plaintiff, was legally and logically drawn from the subordinate facts.

2. That, since the map filed by the owners of the tract in 1896 and informally accepted by the town in that year was obviously designed to give the location of new streets within the development, the trial court properly ruled that it did not constitute a legal lay-out of the existing highway known as New Haven Avenue, which was north of the development, and that the southerly line of that highway, as drawn upon the map, was merely a survey line inserted by the engineer.

3. That the trial court's statement that the blue print and map were to be "disregarded" in determining the boundary line, did not mean, as the defendant contended, that these documents received no consideration at the hands of the court, but merely that, in its opinion, they did not disclose the true situation.

4. That the filing of the blue print and map by the then owners did not constitute a dedication of sufficient land to bring the line of New Haven Avenue five feet further south, since, prior to that time, they had sold certain of the lots fronting upon that highway, including the one subsequently acquired by the defendant; and that, by the same token, the deeds of those owners, conveying to the town the streets shown upon the map, could not have included the five-foot strip adjoining New Haven Avenue.

5. That the trial court properly excluded from evidence a letter, offered upon the cross-examination of a witness, which in no way contradicted his direct testimony, and contained statements essentially hearsay and expressing, at most, only the opinion of the witness.

Argued June 9th—decided October 3d, 1927.

ACTION to quiet title to two certain tracts of land at Woodmont in the town of Milford, brought to the Court of Common Pleas for New Haven County and tried to the court, *Pickett, J.;* judgment rendered for the plaintiff, from which the defendants appealed. *No error.*

*Walter J. Walsh,* for the appellants (defendants).

*Omar W. Platt,* for the appellee (plaintiff).

HAINES, J.  The action as first brought was one for trespass, but, all parties concurring, this was changed, by a substituted complaint, to an action to quiet title.

There are two tracts of land in question, both in Woodmont in the town of Milford, within the block now bounded north by New Haven Avenue, formerly known as Merwin's Point Road, with Usher Street, formerly Woodmont Avenue, on the east, Hawley Avenue, formerly known as Vue Del 'Eau Avenue, on the south, and Clinton Avenue on the west, side.

The tracts are each five feet in width north and south and eighty feet in length east and west, and parallel New Haven Avenue, the plaintiff owning the land on the south, and the defendants the land on the north, side of each tract.  Both the plaintiff and the defendants claim title in fee to those two tracts.  The latter filed no counterclaim, simply denying the title of the plaintiff and alleging their own title.  The trial court correctly held that the plaintiff must rely upon the proof of his own title, and after viewing the premises and upon full hearing, decided that the plaintiff had sustained the burden of proof, and adjudged that she had title to both tracts in fee.

The entire block was originally farm land owned by one Clark, and all lay south of New Haven Avenue, then known as Merwin's Point Road.

Prior to 1889 this land was acquired by Stephen L. Usher and Frederick A. Devoll, who later divided their purchase into blocks or squares abutting on proposed streets and avenues, for the purpose of development as shore property, and such titles as the parties to the present action have, were all derived from Usher and Devoll and their successors.

Several parcels or lots in this tract had been set off and sold by Usher and Devoll before they filed a map of the tract on June 26th, 1895.  This is a blue print in-

scribed "Map of Building Lots made for S. L. Usher and F. A. Devoll, Woodmont, on the Shore in Town of Milford, Conn." No written lay-out or other writing was filed with this blue print. Upon this map are the streets and avenues with their names and also blocks and squares. However, it shows no numbered lots or definite platting into lots, though there are, on some of the blocks, lines, figures and initials apparently indicating lots sold. This map shows no subdivision of that portion of the block in which the two tracts in question are situated. The finding shows that the lots sold before this map was filed make no reference to the map and that there was no evidence that the map was in existence or contemplated when these deeds were made. The map purports to be drawn on a scale of fifty feet to the inch, but it was found that, being a blue print, it is subject to shrinkage and cannot be scaled with accuracy, and upon its face are certain figures conceded to be inaccurate.

A second map which appears in evidence was made by one Hine, an engineer, and by him certified to be correct October 12th, 1896, and inscribed "Map of Woodmont-on-the-Sound in Milford, Conn.; layout accepted by the town October 12, 1896; Ordered by Selectmen E. L. Ford, W. P. Thomas, W. M. Irving." This map shows the streets and avenues in the development with their names, and the center lines of streets and street intersections and angles of intersection, but does not show building lots or subdivisions of blocks and squares.

The Minute Book of town meetings in Milford contains the following: "The legal voters of the town of Milford are hereby notified that the adjourned annual town meeting will be held in the town hall, Milford, Monday, October 12, 1896, at 9 o'clock A.M . . . And to take action on accepting and making of roads at

Woodmont, according to the survey of Frank E. Hine, Civil Engineer." This was signed Elias E. Bradley, Miles E. Plumb, Charles H. Stowe, selectmen, and dated October 6th, 1896; and later, the following appears: "Pursuant to the adjournment of the above call, the legal voters of the town of Milford assembled in the town hall on Monday, October 12, 1896, at nine o'clock in the forenoon, for the reading of the town accounts and the completion of the unfinished business; the Chairman, Honorable Henry C. Platt, in the chair. Voted, that the town accept and work the roads at Woodmont according to the survey of Frank E. Hine, Civil Engineer, provided the property holders convey to the town, the land needed for the proposed roads according to the lay-out."

It appears that on December 25th, 1896, and August 7th, 1897, following the above vote of the town, representatives of Usher and Devoll deeded to the town "all those pieces or parcels of land at Woodmont formerly or now owned by the estate of Stephen L. Usher and Frederick A. Devoll and included in the survey and lay-out of highways and roads in said Woodmont made by Frederick A. Hine [obviously intending Frank E. Hine], Civil Engineer, which survey and lay-out is dated October 12th, 1896, and said lay-out is recorded in the land records of the town of Milford, volume      , page      , for the uses and purposes of public highways in the town of Milford."

It will be seen that at this time the Usher and Devoll interests only owned a portion of the block, several lots or tracts having been sold therefrom before these dates, and one lot being bounded on the north by Merwin's Point Road.

It appears that the controlling question in settling the ownership of these two disputed tracts, is the proper location of the north line of this Usher and

Devoll block. The defendants claim, in effect, that the proper line is that which now appears to be the south line of New Haven Avenue, which is apparently the line shown on the Hine map. On this basis, and measuring from that line south, the amount of land which the defendants' deeds call for, carries their southern boundary to the south line of the two lots in question. If this be correct, they own these tracts, and it further results that the amount of land which the plaintiff's deeds call for, falls short five feet. In other words, if the present apparent south line of New Haven Avenue, or the Hine line, is the correct one, there is a shortage of five feet of the land necessary to meet the requirements of the deeds of both parties to the present action.

The claim of the plaintiff is that the true north line of the Usher and Devoll block is about five feet further north than that claimed by the defendants, and if this be so, there is then sufficient land to satisfy the deeds of both the parties and the two five-foot tracts in question are included in the plaintiff's holdings; otherwise it results that the Usher and Devoll interests deeded five feet more land than they had.

A large amount of evidence, both oral and documentary, was produced at the trial, and was all considered with obvious care and in detail by the court, with a resulting judgment sustaining the claim of the plaintiff to these two lots.

The finding, however, contains much that, being purely evidential in character, strictly has no appropriate or proper place in a finding of facts upon which our consideration of the case must be based. Those claims for correction of the finding which seem to us important, will be briefly considered. It was the contention of the plaintiff that the true line was substantially the line of an old stone wall formerly existing,

about five feet north of the present south coping of New Haven Avenue. The court reached this conclusion and finds certain subordinate facts upon which it is based. These include findings as to the existence and location of the old stone wall, an apple tree, a stone bound, and the statements of a former owner, Daniel Usher, who placed it there. The trial court refused to strike out these findings, and such refusals are assigned as errors.

When the Usher and Devoll owners deeded the present defendants' lot, No. 11, on the southeast corner of New Haven Avenue and Clinton Avenue, to Minnie Pierpont in 1896, there was an old stone wall on the north side of the lot, about two feet from the present traveled portion of New Haven Avenue. It was about five feet north of the present coping on the south side of the street. Minnie Pierpont considered and claimed this stone wall as her north boundary line. There was also a stone wall on the other side of New Haven Avenue, portions of which still remain. Minnie Pierpont removed the old stone wall on her north line, and put in its place a wire fence. She also set a maple tree which is still standing. There was also an apple tree near this wall, which was cut in 1920 by the defendants, and all this is north of the present coping. The location of the apple tree is now covered by the present sidewalk on the south side of the street. The court finds that the defendants themselves, as successors of Minnie Pierpont, claimed the land to the line of the old stone wall until this litigation arose. An irregularly shaped stone was placed by Daniel Usher, who then owned the lot, in line with this wall, when it was about to be removed, giving as his reason that it was to mark the line of the wall which he claimed as his north line. These subordinate facts should stand, being supported adequately by the evidence.

Other requests to strike out include the finding that there was no legal lay-out of New Haven Avenue, and that a certain line on the so-called Hine map was an arbitrary line. In particular, the appellants based this request to strike out the finding of no lay-out, on the ground that the facts in the finding do not support the conclusion. They insist that these facts show New Haven Avenue or Merwin's Point Road was fully and formally accepted by the town as shown on the Hine map. If the informal action taken by the town be conceded to amount to a legal lay-out, it surely cannot be said to include anything beyond what is shown on the Hine map, and this map purports to include no more than the block in question and the streets within its limits. The finding by the court, as confirmed by the map, is that it shows streets and avenues "in the development," with their center lines and angles of intersection. The Merwin's Point Road or New Haven Avenue, was not within the development, but lay to the north of it, and the map shows only its line of intersection with the center lines of the streets in the development, obviously a survey line. It is true another line is inserted, apparently to suggest the north line of the street, but if we are correct in what has just been said, that is clearly an "arbitrary" line put on by the engineer. The defendants seem to argue that New Haven Avenue is shown to be forty feet in width; but the Hine map, upon which that argument is largely based, shows varying widths for the avenue, 38 feet, 35.5 feet, 40 feet, 37.7 feet and 42.5 feet, appearing there. The court was correct in concluding that the Hine map was not intended to include an accurate description of this avenue, and, there being no description or dimensions given in the records of the so-called lay-out, that there had been no legal layout established. This finding is further supported by

the testimony of A. R. Moore, civil engineer, who testified that he had examined the records of the town, and that while all these other avenues and streets in question were laid out by name and full description, New Haven Avenue was not included, and that so far as he could find, no lay-out of that avenue had ever been made. The conclusion of the court that there had been no lay-out of this street, was a reasonable and logical one and should stand.

The claims for the insertion of certain paragraphs of the draft-finding were properly denied. Some of our reasons therefore will appear from the subsequent discussion.

From a long study of the record and the documentary evidence, we are constrained to hold that the finding as made should stand and that no error was committed by the trial court in denying the motion to correct.

In a summary of conclusions from these subordinate facts, the trial court holds that the blue print, defendants' Exhibit 2, and the Hine map, defendants' Exhibit 3, are to be "disregarded" in interpreting conveyances and determining boundary lines between these parties, and in particular, the north line of the Usher and Devoll block. These conclusions are the ground of the first two assignments of error. Clearly, the expression "disregarded" does not mean that these maps received no consideration at the hands of the court. At most, it means that the court did not consider them as stating the true situation in the particulars mentioned. It is, at most, an evidential matter and strictly has no place in the finding. Its only effect is to show how the court weighed this evidence. The reasoning by which the court arrived at this conclusion, is more fully indicated in the memorandum of decision.

That reasoning is logical, and we cannot say that the conclusion reached was unsound; it was not.

The third assignment relates to the conclusion of the trial court that there had been no legal lay-out of New Haven Avenue. This assignment cannot be sustained for reasons already stated.

The next four assignments relate to the fourth, fifth and sixth conclusions of the court. The substance of these is that the north line of the plaintiff's Clinton Avenue lot is one hundred feet south of the south line of New Haven Avenue, as it existed when the owner of the adjacent lot to the north deeded to Minnie Pierpont in 1896; that the north line of the plaintiff's Usher Street lot is one hundred and forty-five feet south of the southerly line of New Haven Avenue, as that line existed in 1906; that the southerly line of New Haven Avenue, as referred to in both the plaintiff's title deeds, was the line of the old stone wall, now in line with the large stone already referred to and about five feet north of the line of the defendants' present occupancy. The attack upon these conclusions is based on the claim that they conflict with the blue print and the Hine map. These have already been somewhat discussed. The defendants say the blue print constituted a dedication for highway purposes and that its acceptance in the adoption of the Hine map by the town, is conclusive upon the parties to this action. We do not think it is so, as the defendants claim, that the common grantors, by the blue print and Hine maps, "intended to dedicate such portion of their property as would make New Haven Avenue a substantially forty foot highway." Nor does it appear that these grantors had any authority to fix the width of New Haven Avenue, or that they did so. They could set aside land within their own tract, as they did, for the highways within its limits, and of certain

widths. These were described in detail and laid out and accepted by the town. Not so New Haven Avenue. This lay to the north of the common grantors' property. True, they could dedicate some of their land, and thus bring the south line of that street further south. If they had done this before transferring any of their lands on that front to other people, the result claimed by the defendants might well have followed, so far as dedication was concerned. But these transfers by the Usher and Devoll interests, already referred to herein, were subsequent to the transfer to Minnie Pierpont in May, 1896, of fifty-four feet of the frontage on Merwin's Point Road or New Haven Avenue. The old wall was then there, and she claimed to take to the wall in accordance with the declaration of Daniel Usher, who formerly owned that lot, and that claim seems to have been maintained. It does not appear that she, or anyone for her, ever made a dedication of five feet for the purposes of the highway. It is clear that Usher and Devoll could not do so by their subsequent deeds in December, 1896, and August, 1897. It will be noted that in these deeds the Usher and Devoll interests claim to convey to the town for highway purposes "all those pieces or parcels of land at Woodmont *formerly or now owned* by the estate of Stephen L. Usher and Frederick A. Devoll and included in the survey and lay-out of highways and roads in said Woodmont made by Frederick A. Hine." The defendants assume that this lay-out of the highways includes New Haven Avenue, which does not seem to be the fact. Furthermore, it is apparent that these grantors could not transfer anything they had "formerly owned." As Minnie Pierpont's line began at the old stone wall, and she concededly took one hundred feet on Clinton Avenue, the north line of the plaintiff's Clinton Avenue lot begins one hundred

feet south of the line of that wall. We are convinced that the conclusion of the trial court was correct.

Defendants' further assignments relate to the overruling of five of their claims of law. The first was that the record of the town meeting establishes the acceptance of the lay-out of New Haven Avenue in accordance with the Hine map. We do not think this is so, for reasons already indicated. The defendants further say the common grantors accepted this line of the Hine map as fixing the south line of the street. As we have already indicated, their acceptance could not bind those to whom the common grantors had previously conveyed land fronting this street. The defendants claim the north line of all the plaintiff's lots can only be established by the Hine map, and that all the evidence taken together shows the line to be as claimed by the defendants. These claims are not sustained, for reasons which will appear in what we have already said in that connection. Nor is the legal significance attached to the interlineation of "more or less" in one of the deeds, of controlling importance in view of the other facts established. This covers all assignments based upon the defendants' claims of law overruled.

Four assignments of error relate to the admission and exclusion of evidence. Two have reference to the exclusion of a certain letter written by a witness, Alexander Cahn, civil engineer, to one Cunningham. This was offered by the defendants upon the cross-examination of the witness. A reading of it does not disclose that it tended in any way to contradict the direct testimony of the witness. The statement sought to be introduced by it was essentially hearsay, and it was a statement made to one who was not a party to this action, and, at most, only expressed the opinion of the witness. The ruling was correct. The further

question propounded to this witness upon cross-examination and excluded, was in any event harmless. The last ruling complained of, admitting the question, "Where was that tree with reference to that sidewalk?" was correct. In view of the other testimony which had preceded it, it was proper rebuttal, and its admission, in any event, was within the court's discretion.

We are unable to find that any error was committed by the trial court of such character as to prejudice the interests of these defendants. The case turned very largely upon questions of fact, and in deciding that the plaintiff had sustained the burden of proving her title to the two five-foot tracts in question, the court did not err.

There is no error.

In this opinion the other judges concurred.